OPINION OF THE COURT
Thomas F. Whelan, J.
It is, ordered that this order to show cause (No. 002) wherein the defendant, Khouloud Pietranico, seeks an order “staying all proceedings in this matter until such time as the accompanying *531 motion is fully and finally heard and determined,” is denied, in its entirety.
In response to the increase in residential foreclosures, the State Legislature has affirmatively obligated the Judiciary to resolve the increasing conflict between two countervailing public policies: “(1) the interest in protecting families and communities by not allowing financial institutions to foreclosure on homes without the legal authority to do so, and (2) preventing further harm to an economy dependent on the mortgage industry’s ability to recoup debt.”[1] The issues presented here, concerning ownership of the mortgage note and the effectiveness of an assignment of a mortgage executed by Mortgage Electronic Registration Systems, Inc. (MERS), have been the subject of ever-growing and often confusing litigation throughout the state. Therefore, the court will take the opportunity to carefully address the complex issues presented.
Background
The defendant, Khouloud Pietranico, borrowed $652,000 and with that money bought a house in Dix Hills, New York. In order to obtain the money, the defendant signed two pieces of paper, that is, a promissory note and a mortgage, and agreed that the holder of the mortgage has the right to foreclose in the event of a default in the repayment of the monies borrowed. The defendant stopped paying on June 1, 2009 and has not made a single payment since that date.
Plaintiff commenced this action to foreclose the mortgage on February 4, 2010. The complaint alleges that the defendant, Khouloud Pietranico, on November 16, 2006, executed an adjustable rate note to American Brokers Conduit for the principal sum of $652,000 and a mortgage to secure payment to MERS, as nominee for American Brokers Conduit. Additionally, the complaint alleges that the plaintiff was assigned the note and mortgage and that the “plaintiff is also in possession of the original note with proper endorsement and/or allonge and is therefore, the holder of both the note and mortgage, which passes as incident to the note.” An affidavit of service alleges that the defendant was personally served with the pleadings and the RPAPL 1303 notice on February 11, 2010.
*532 The defendant defaulted in answering and additionally defaulted in appearing at the scheduled in-court foreclosure conference required pursuant to CPLR 3408 on March 24, 2010. By order dated May 24, 2010, this court noted the time to answer or appear had expired and that the defendant failed to answer or make a motion and was in default. The court also noted the nonappearance at the in-court foreclosure conference and appointed a referee to compute the sums due and owing under the complaint. Now, one year after the order appointing the referee, defendant submits the instant application.
The motion is advanced by an affidavit from a purported “expert in the areas of mortgage loans, mortgage loan documentation, and mortgage securitization.” While the papers do contain a nonconforming attorney certification pursuant to 22 NYCRR 130-1.1, and an attorney argued for the signing of the order to show cause, no attorney affirmation is offered. The relief sought is not set forth in the order to show cause. The supporting affidavits request various reliefs, such as, “vacate the referee’s report and order of sale,” “dismiss the present proceedings,” “compel the acceptance of a later [sic] answer,” “that plaintiffs’ motion for summary judgment in all respects be [sic] hereby be vacated,” “that Plaintiff [sic] be given leave to serve and file an answer and/or response to Plaintiffs motion for summary judgment,” and “vacate the referees report, immediately schedule a traverse hearing on the issue of service of process, and permit defendant to file on and timely answer this matter.”
As noted above, this matter never progressed to a summary judgment motion due to defendant’s default and no referee’s report or order of sale has been submitted to the court. The court will deem the application as one to vacate the default in answering and a request to dismiss on the grounds that the court lacks in personam jurisdiction over the defendant due to a lack of service.
Claim of Lack of Service
It is well established that a process server’s sworn affidavit of service constitutes prima facie evidence of proper service (see Wells Fargo Bank, N.A. v McGloster, 48 AD3d 457 [2d Dept 2008]; Household Fin. Realty Corp. of N.Y. v Brown, 13 AD3d 340 [2d Dept 2004]). A defendant can rebut the process server’s affidavit by a sworn denial of service in an affidavit containing specific and detailed contradictions of the allegations in the process server’s affidavit (see Bankers Trust Co. of Cal. v Tsoukas, *533 303 AD2d 343 [2d Dept 2003]). Bare conclusory and unsubstantiated denials of receipt of process are thus insufficient to rebut the presumption of proper service created by the affidavit of the plaintiffs process server and to require a traverse hearing (see Irwin Mtge. Corp. v Devis, 72 AD3d 743 [2d Dept 2010]; Beneficial Homeowner Serv. Corp. v Girault, 60 AD3d 984 [2d Dept 2009]; Hamlet on Olde Oyster Bay Homeowners Assn., Inc. v Ellner, 57 AD3d 732 [2d Dept 2008]; Mortgage Elec. Registration Sys., Inc. v Schotter, 50 AD3d 983 [2d Dept 2008]; 425 E. 26th St. Owners Corp. v Beaton, 50 AD3d 845 [2d Dept 2008]; Jefferson v Netusil, 44 AD3d 621 [2d Dept 2007]; Simmons First Natl. Bank v Mandracchia, 248 AD2d 375 [2d Dept 1998]).
Here, the moving defendant’s papers were insufficient to rebut the process server’s affidavit of service of the summons and complaint pursuant to CPLR 308 (1). The bald, conclusory, and unsubstantiated denial of service set forth in the moving defendant’s supporting affidavit failed to rebut the presumption of service that arose from the affidavit of plaintiff’s process server (see Beneficial Homeowner Serv. Corp. v Girault, 60 AD3d 984 [2009], supra; Hamlet on Olde Oyster Bay Homeowners Assn., Inc. v Ellner, 57 AD3d 732 [2008], supra). The defendant’s affidavit does not specifically dispute the physical description set forth in the process server’s affidavit and only states that “it does not accurately describe me.” Defendant does admit to living at the property where service was effectuated and the dates listed for hospital visits do not include the date of service. All that is offered is a general denial of service (cf. U.S. Bank, N.A. v Arias, 85 AD3d 1014 [2d Dept 2011]).
The “mortgage expert,” without any claim of personal knowledge, seeks to apprise the court as to the description of the defendant. The court rejects the attempt to raise an issue of fact based upon such hearsay allegations (see Lynch v New York City Tr. Auth., 12 AD3d 644 [2d Dept 2004]; Olesniewicz v Khan, 8 AD3d 354 [2d Dept 2004]; Simonds v Grobman, 277 AD2d 369 [2d Dept 2000]). Those portions of the instant application wherein the moving defendant seeks a vacatur of the order of reference and dismissal of the plaintiffs complaint for lack of personal jurisdiction is thus denied (see Pezolano v Incorporated City of Glen Cove, 71 AD3d 970 [2d Dept 2010]).
Application to Vacate Default
The moving defendant’s alternative claims for vacatur of the order of reference and her request for leave to serve and file a late answer are equally unavailing. To be entitled to such *534 relief pursuant to CPLR 5015 and 3012, the moving defendant was required to set forth a justifiable excuse for her default and a meritorious defense (see Development Strategies Co., LLC, Profit Sharing Plan v Astoria Equities, Inc., 71 AD3d 628 [2d Dept 2010]; Mora v Scarpitta, 52 AD3d 663 [2d Dept 2008]; Grinage v City of New York, 45 AD3d 729 [2d Dept 2007]; Yellow Book of N.Y., Inc. v Weiss, 44 AD3d 755 [2d Dept 2007]). The only excuse offered by the defendant was improper service which has been found to be unmeritorious. Since the defendant offered no other excuse for her default, she is not entitled to the relief demanded pursuant to CPLR 5015 (a) (1) (see Tadco Constr. Corp. v Allstate Ins. Co., 73 AD3d 1022 [2d Dept 2010]; Pezolano v Incorporated City of Glen Cove, 71 AD3d 970 [2010], supra). The moving defendant’s claims to one or more meritorious defenses are thus inconsequential and the court need not determine whether defendant demonstrated a meritorious defense (see Development Strategies Co., LLC, Profit Sharing Plan v Astoria Equities, Inc., 71 AD3d 628 [2010], supra).
Waiver of Lack of Standing Claim
In any event, such claims, which are predicated upon a purported lack of standing on the part of the plaintiff, were waived by the defendant’s failure to answer or to assert a preanswer motion to dismiss the complaint.
Recent case authorities emanating from the Appellate Division, Second Department, have held that the issue of the plaintiffs standing is not a matter of subject matter jurisdiction, but rather, is more akin to the issue of the plaintiffs capacity to sue. In Wells Fargo Bank Minn., N.A. v Mastropaolo (42 AD3d 239, 242 [2d Dept 2007]), the court instructed that “where a defendant does not challenge a plaintiff’s standing, the plaintiff may be relieved of its obligation to prove that it is the proper party to seek the requested relief.” The court went on to hold that “an argument that a plaintiff lacks standing, if not asserted in the defendant’s answer or in a pre-answer motion to dismiss the complaint, is waived pursuant to CPLR 3211 (e)” (see Wells Fargo Bank Minn., N.A. v Mastropaolo, 42 AD3d 239, 242 [2007], supra [citations omitted]; see also HSBC Bank, USA v Dammond, 59 AD3d 679 [2d Dept 2009] [waived standing issues does not constitute meritorious defense on application to vacate default]; Deutsche Bank Natl. Trust Co. v Young, 66 AD3d 819 [2d Dept 2009] [standing issue unavailing on application to vacate default judgment]; US. Bank, N.A. v Emmanuel, 83 AD3d 1047 [2d Dept 2011]; Deutsche Bank Natl. Trust Co. v *535 Hussain, 78 AD3d 989 [2d Dept 2010]; Countrywide Home Loans Servicing, LP v Albert, 78 AD3d 983 [2d Dept 2010]; Aames Funding Corp. v Houston, 57 AD3d 808 [2d Dept 2008]).
Therefore, it is apparent here that the defendant’s assertion of her standing defense in an effort to vacate the order of reference is unavailing since the defendant waived such defense by failing to assert it in a timely pre-answer motion to dismiss or as an affirmative defense in an answer (see Deutsche Bank Natl. Trust Co. v Young, supra, compare U.S. Bank N.A. v Pia, 73 AD3d 752 [2d Dept 2010]; Bank of N.Y. v Silverberg, 86 AD3d 274 [2d Dept 2011]).
Standing Demonstrated
In any event, plaintiff has submitted sufficient evidence to support its standing to commence this action to foreclose the mortgage at issue. The complaint and the documents annexed to the opposition papers establish that the plaintiff was validly assigned the note and mortgage that is the subject of this action (see GECMC 2007-C1 Ditmars Lodging, LLC v Mohola, LLC, 84 AD3d 1311 [2d Dept 2011], affg 2010 NY Slip Op 31790[U] [Sup Ct, Queens County 2010, Orin R. Kitzes, J.]).
Contrary to defendant’s contention,[2] her loan was part of the Pooling and Servicing Agreement (PSA) that is at issue. Moreover, the PSA makes clear that the underlying note was properly endorsed and included in the transfer, as part of the agreement. Additionally, even the papers submitted by defendant discloses the endorsement, without recourse by American Brokers Conduit, on the last page of the adjustable rate note. As holder of the note, with a proper endorsement, plaintiff has standing to commence this action. Moreover, defendant’s “mortgage expert” concedes the existence, but not the legality, of the assignment of the mortgage dated four days prior to the commencement of the action.
Controlling Case Law Review
A review of the controlling case law is in order. The leading case for the rule that in a secured transaction the obligation is the principal thing and the security only an incident thereto is Merritt v Bartholick (36 NY 44 [1867]).[3] In that case, the Court of Appeals, in reviewing a referee’s decision, was faced with the *536 issue of whether the delivery of a mortgage was intended to operate as a valid assignment of the mortgage. By written assignment (without actual delivery of the bond or mortgage) a bond and mortgage were assigned by plaintiff, John A. Merritt, to an individual, John Campbell. However, prior to that assignment, Merritt, who was indebted to another individual, Henry T. Wentworth, delivered only the mortgage as collateral security for that separate debt, to Wentworth, but no mention was made of the bond. The Court held that the assignment to Campbell was valid and the attempted assignment by delivery of the mortgage alone to Wentworth was a “nullity.”
Critically, as shown below, the Court stated that the question whether the bond “was, in effect, assigned with the mortgage” to Wentworth, was a matter of intent (36 NY at 45).
“Unless then, the bond was, in effect, assigned with the mortgage, Wentworth obtained no interest in the mortgage. Did the bond or the debt which it evidenced pass to Wentworth? In the first place, the transfer of the mortgage did not of itself operate to transfer the bond, for the legal maxim is, the incident shall pass by the grant of the principal, but not the principal by the grant of the incident. So that unless we are authorized to say, that such was the intent of the parties, we cannot hold that it did. This is a question of fact, which the counsel for the appellant argues in his points, but unless the referee has found it, as a fact, or found facts from which we are bound to infer its existence, it is a question not in the province of this court to determine. The act done by Merritt, the mortgagee, was the delivery of the mortgage to Wentworth, and the purpose of the delivery was to secure the payment of the debts of the mortgagee to Wentworth. Does it necessarily follow that the intention of the parties was to transfer the bond? The referee has not found either way upon this question of intent, and therefore, unless the intent in question is to be inferred, as a matter of legal necessity from what he does find, it must now be held not to have existed. “If the transfer had been by a written assignment, describing the mortgage alone, and expressing the object to be to secure the debt of the assignor to the assignee, nothing being said about the bond or the debt which it represents, and delivery of the mortgage made, it would be impossible, I think, to hold *537 that the intention was to assign the bond. There would be no opportunity for an implication to that effect. . . .
“The fact that here the transfer was by manual delivery, merely, nothing being said as to the bond or the indebtedness secured by it, does not afford any stronger evidence of intent to transfer the bond than the case supposed. There is no circumstance in the case not considered in the supposed case, and, as I think, nothing to compel the inference of intent to transfer the bond.” (35 NY at 45-46.)
The court’s determination suggested the possibility that had Wentworth received a document of assignment expressing the intent to transfer the bond with the mortgage, the outcome may have been different.[4]
The Second Department, in Kluge v Fugazy (145 AD2d 537, 538 [2d Dept 1988]), followed the rule set forth in Merritt v Bartholick (supra), and addressed the issue of intent.
“As the result of a series of financial transactions, the plaintiff received an assignment of a mortgage as collateral security for a promise of indemnification. The underlying note was not assigned and was expressly excluded from transfer. . . .
“Moreover, we find that the written agreement and assignment between the parties were clear and unambiguous. They indicate that no delivery of the underlying obligation was intended.” (145 AD2d at 537-538.)
Based upon the above, the critical issue for the court is can the intention of the parties to assign, convey, or transfer the *538 bond and mortgage, be ascertained from the instruments?[5] It must be remembered that the two instruments, the mortgage and mortgage note, which were “negotiated and executed as part of an integrated agreement for the purchase of real property, should be read and considered together as part of the same transaction (Stern v Itkin Bros., 87 Misc 2d 538 [Sup Ct, NY County, Fein, J.])” (Bronxville Knolls v Webster Town Ctr. Partnership, 221 AD2d 248 [1st Dept 1995]). Therefore, an examination of the note and mortgage is in order.[6]
The Note
On November 16, 2006, the defendant, Khouloud Pietranico (the borrower), executed a six-page adjustable rate note to American Brokers Conduit (the lender) for the principal sum of $652,000. Under the section, Borrower’s Promise to Pay, the borrower acknowledged: “I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the ‘Note Holder.’ ”
Under the provision, Uniform Secured Note, the borrower acknowledged:
“In addition to the protections given to the Note Holder under this Note, a Mortgage . . . (the ‘Security Instrument’), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I *539 make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note.”
Currently, the note contains a without recourse endorsement from American Brokers Conduit, made payable to the order of the plaintiff, Deutsche Bank, with reference to the Pooling and Servicing Agreement of January 1, 2007.
The Mortgage
On the same date, the borrower executed the mortgage (Security Instrument) described in the note. MERS is described (at 1) as “a separate corporation that is acting solely as a nominee for Lender and Lender’s successors and assigns. . . . FOR PURPOSES OF RECORDING THIS MORTGAGE, MERS IS THE MORTGAGEE OF RECORD.”
American Brokers Conduit is named as the lender in the mortgage. The mortgage also contains a transfer/due on sale clause to MERS of the borrower’s rights to the property (at 3).
“BORROWER’S TRANSFER TO LENDER OF RIGHTS IN THE PROPERTY
“I, mortgagee, grant and convey the Property to MERS (solely as nominee for Lender and Lender’s successors in interest) and its successors in interest subject to the terms of this Security Instrument. This means that, by signing this Security Instrument, I am giving Lender those rights that are stated in this Security Instrument and also those rights that Applicable Law gives to lenders who hold mortgages on real property. I am giving Lender these rights to protect Lender from possible losses that might result if I fail to: [comply with obligations under the Security Instrument and the note]. “I understand and agree that MERS holds only legal title to the rights granted by me in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender’s successors and assigns) has the right: “(A) to exercise any or all of those rights, including, but not limited to, the right to foreclose and sell the Property; and “(B) to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.”
*540 Under Description of the Property (at 3-4), the borrower further agrees as follows: “I give to MERS (solely as nominee for Lender and Lender’s successors in interest) rights in the Property described in (A) through (G) below.”
Critically, under item 20 of Covenants, entitled Note Holder’s Right to Sell the Note or an Interest in the Note, the borrower agreed to the following (at 13): “The Note, or an interest in the Note, together with the Security Instrument, may be sold one or more times. I might not receive any prior notice of these sales” (emphasis added).
Finally, under item 22 of the Non-Uniform Covenants (at 14-15), the lender’s rights include the following: “If Lender requires Immediate Payment in Full, Lender may bring a lawsuit to take away all of my remaining rights in the Property and have the Property sold. At this sale Lender or another Person may acquire the Property. This is known as ‘Foreclosure and Sale.’ ”
Lastly, the Assignment of Mortgage, dated January 25, 2010, references the mortgage and lists the mortgagee as MERS, as nominee for American Brokers Conduit, and defines the assignee as the plaintiff, Deutsche Bank. The assignment further states that it is assigning the described mortgage, “together with the note or obligation described and secured by said mortgage, and the monies due and to grow due thereon with interest.”
Reading the note and mortgage together, as one must do since they were executed on the same day as one transaction and the note makes express reference to the obligations contained in the mortgage, and vice versa, it is patent that it was the intention of the contracting parties that the note and mortgage would remain united and together, by virtue of the role of MERS to the transaction. In reading the two together, one must conclude that MERS is the nominee or common agent for the lender and all of its assigns. Additionally, the borrower transferred rights to the property to MERS, subject to the terms of the mortgage. MERS has the right, as nominee for the lender, to assign the mortgage due to its status as holder of the legal title. In any event, since the note is part of the underlying Pooling and Servicing Agreement, Deutsche Bank has the requisite standing.
Pooling and Servicing Agreement
The Pooling and Servicing Agreement has been set forth by both parties in their motion papers and can be referenced, in its *541 entirety, at www.secinfo.com/dqTm6.uB7.c.htm. In pertinent part, section 2.01 (a) (at 44) shows that plaintiff, as trustee, is being conveyed various mortgage loans identified on the mortgage loan schedule and, with respect to each mortgage loan, the following documents, among others, have been delivered or deposited:
“(i) the original Mortgage Note endorsed without recourse to the order of the Trustee or in blank, and showing an unbroken chain of endorsements from the original payee thereof to the Person endorsing it to the Trustee or in blank or, with respect to any Mortgage Loan as to which the original Mortgage Note has been lost or destroyed and has not been replaced, a Lost Note Affidavit; “(ii) the original Mortgage with evidence of recording thereon, or, if the original Mortgage has not yet been returned from the public recording office, a copy of the original Mortgage certified by the Sponsor or the public recording office in which such original Mortgage has been recorded; “(in) an assignment (which may be included in one or more blanket assignments if permitted by applicable law) of the Mortgage in blank or to the Trustee (or to MERS, if the Mortgage Loan is registered on the MERS® System and noting the presence of a MIN) and otherwise in recordable form.”
The redacted mortgage loan schedule submitted with the papers demonstrates that defendant’s loan was listed in and made part of the PSA. A review of the PSA by the court reveals defendant’s loan as number 149 set forth on various schedules. As such, contrary to defendant’s contention concerning the date of the assignment, defendant’s loan documentation was delivered as part of the PSA as of January 1, 2007. Next, the role of MERS as nominee or common agent for the lender and all of its assigns must be explored.
MERS
Courts have struggled to understand the MERS system since it was created in 1993. The Court of Appeals has, in Matter of MERSCORP, Inc. v Romaine (8 NY3d 90, 96 [2006]), touched upon the history of MERS, in a determination which upheld the right of MERS to compel the Suffolk County Clerk to record and index its mortgages and assignments and discharges thereof:
*542 “Mortgage lenders and other entities, known as MERS members, subscribe to the MERS system and pay annual fees for the electronic processing and tracking of ownership and transfers of mortgages. Members contractually agree to appoint MERS to act as their common agent on all mortgages they register in the MERS system.
“The initial MERS mortgage is recorded in the County Clerk’s office with ‘Mortgage Electronic Registration Systems, Inc.’ named as the lender’s nominee or mortgagee of record on the instrument. During the lifetime of the mortgage, the beneficial ownership interest or servicing rights may be transferred among MERS members (MERS assignments), but these assignments are not publicly recorded; instead they are tracked electronically in the MERS’s private system.” (Emphasis added.)
Recently, in Bank of N.Y. v Silverberg (86 AD3d 274 [2011]), the Second Department, in explaining and examining the role of MERS, referenced a MERS Web site, MERS, About Us, Overview, http://www.mersinc.org/about/index.aspx, a particularly intemperate law review article (see Peterson, Foreclosure, Subprime Mortgage Lending, and the Mortgage Electronic Registration System, 78 U Cin L Rev 1359 [2010]),[7] newspaper articles, and the holding in a Bankruptcy Court case, In re Agard (444 BR 231 [2011]).
Aside from such outside references, in the instant case, the defendant has attached as an exhibit the testimony of R.K. Arnold, the then-president and CEO of MERSCORE] Enc., before the Senate Committee on Banking, Housing and Urban Affairs (dated Nov. 16, 2010). The following excerpts from that testimony (at 6, 7-8, 10, 16-17) offer a clearer understanding of the MERS system.
“MERS acts as the designated ‘common agent’ for the MERS member institutions in the land records, which means that MERS holds the mortgage lien on behalf of its members and acts on their behalf as mortgagee. To accomplish this, at the time of the *543 closing, the borrower and lender appoint MERS to be the mortgagee. The designation of MERS is prominently displayed on the mortgage document and is affirmatively approved by the borrower at closing. . . .
“Every time a note or servicer changes hands, a notation of that change is made (electronically) on the MERS® System by the members involved in the sale. In this way, changes in servicing rights and beneficial ownership interest in the promissory note are tracked over the life of the loan.
“A fundamental legal principle is that the mortgage follows the note, which means that as the note changes hands, the mortgage remains connected to it legally even though it is not physically attached. In other words, the promissory note is enforceable against the property because of the mortgage, but the mortgage instrument itself is not independently enforceable as a debt. This principle is not changed when MERS is the mortgagee because of the agency relationship between MERS and the lender. An agency relationship arises where one party is specifically authorized to act on behalf of another in dealings with third persons, and the legal definition of a ‘nominee’ is a ‘party who holds bare legal title for the benefit of others.’ Here, the language of the mortgage appoints MERS as nominee, or agent, for the lender and its successors and assigns for the purposes set forth therein. The mortgage also grants MERS broad rights, again as nominee for the lender and the lender’s successors and assigns, ‘to exercise any or all’ of the interests granted by the borrower under the mortgage, ‘including but not limited to, the right to foreclose and sell the property; and to take any action required of the lender.’ Thus, the language of the recorded mortgage authorizes MERS to act on behalf of the lender in serving as the legal titleholder under the mortgage and exercising any of the rights granted to the lender there under.
“MERS members affirm this agency relationship with MERS in their membership agreements, which *544 provide that MERS ‘shall serve as mortgagee of record’ with respect to each mortgage loan that the MERS member registers on the MERS System and provide that ‘MERS shall at all times comply with the instructions of the holder of the mortgage loan promissory notes.’ . . .
“When the note is sold, MERS continues to act as the mortgagee for the new noteholder because the mortgage interest follows the note when it changes hands. . . .
“The chain of title starts and stops with Mortgage Electronic Registration System, Inc. as the mortgagee. MERS, as agent for the note-owner, can hold legal title for the note-owner in the land records.
The basic concept of a recording statute is that a person or company claiming an interest in land protects its interest by recording that interest at the county recorder of deeds office. The recorded document provides constructive notice to the world of the claim. . . . The concept of nominees appearing in the land records on behalf of the true owner has long been recognized. It has never been the case that the true owners of interests in real estate could be determined using land records.”
Although the above testimony contains various assumptions of law, a review of the note, mortgage, the PSA, and the other exhibits, read in conjunction with the testimony, demonstrates that MERS, as noted in Matter of MERSCORP, Inc. v Romaine (8 NY3d 90 [2006], supra), has been contractually designated by members who register in the MERS system to act as their common agent on all mortgages they register therein and that the documents demonstrate that clear intention of the parties.[8] As such, particularly under the MERS system, the holder of the *545 note can enforce the mortgage since the mortgage interest follows the note when it changes hands.[9]
Analysis
Under New York law, it is the owner of the mortgage note that dictates ownership of the mortgage as evidence by articles 3 and 9 of the Uniform Commercial Code. As commonly said, the “mortgage follows the note” so that when the note changes hands, the mortgage interest automatically follows. The mere possession of a promissory note endorsed in blank (just like a check) provides presumptive ownership of that note by the current holder. Such is the foundation of negotiable instruments law. Any disparity between the holder of the note and the mortgagee of record does not stand as a bar to a foreclosure action because the mortgage is not the dispositive document of title as to the mortgage loan. The holder of the note is deemed the owner of the underlying mortgage loan with standing to foreclose.[10] Such was the holding in Mortgage Elec. Registration Sys., Inc. v Coakley (41 AD3d 674, 674 [2d Dept 2007] [“at the time of the commencement of this action, MERS was the lawful holder of the promissory note, and of the mortgage, which passed as an incident to the promissory note. Accordingly, MERS had standing to bring this action” (citations omitted)]; see also Yoi-Lee Realty Corp. v 177th St. Realty Assoc., 208 AD2d 185, 189-190 [1st Dept 1995] [“The mortgage note is inseparable from the mortgage, to which the note expressly refers, and from which the note incorporates provisions for default”]).
The Second Department in Bank of N.Y. v Silverberg (86 AD3d 274, 282 [2011], supra), in reviewing Coakley (supra), reaffirmed that its prior “determination was a sufficient basis upon which *546 to conclude that MERS had standing.” While also noting that the two mortgages in that case were superseded by the consolidation agreement, the court did retreat from the dicta in Coakley, that based upon the clear and unequivocal terms of the mortgage instrument itself, the borrower had expressly agreed that MERS had the right to foreclose (“[t]his Court’s holding in Coakley was dependent upon the fact that MERS held the note before commencing the foreclosure action. In the absence of that crucial fact, the language in the mortgage instrument would not have provided ‘further support’ for the proposition that MERS had the power to foreclose in that case” \id. at 283]). The court, thereby, reaffirmed the supremacy of the note in relation to the mortgage.
In reading the plethora of foreclosure decisions that have been issued recently, confusion arises from the constant recitation in foreclosure case law that for purposes of standing, a plaintiff must show “it is both the holder or assignee of the subject mortgage and the holder or assignee of the underlying note at the time the action is commenced” (Bank of N.Y. v Silverberg, 86 AD3d 274, 279 [2011], supra; see also Aurora Loan Servs., LLC v Weisblum, 85 AD3d 95 [2d Dept 2011]; U.S. Bank, N.A. v Collymore, 68 AD3d 752 [2d Dept 2009]), while, at the same time, acknowledging the “principal-incident rule.” Then, what sometimes follows, is a limitation of the contractual role or authority of MERS as a “nominee,” with the sole reference to Black’s Law Dictionary (see e.g. Bank of N.Y. v Silverberg, 86 AD3d 274, 281 [2011], supra; see also HSBC Bank USA v Squitieri, 29 Misc 3d 1225[A], 2010 NY Slip Op 52000[U] [2010]; Bank of N.Y. v Alderazi, 28 Misc 3d 376 [Sup Ct, Kings County 2010]) or to the holding of the Supreme Court of Kansas[11] in Landmark Natl. Bank v Kesler (289 Kan 528, 216 P3d 158 *547 [2009]; see e.g. In re Agard, 444 BR 231 [2011] [the Silverberg {supra) holding appears to track the reasoning set forth in this Bankruptcy Court case]).
MERS Has Authority to Assign the Mortgage
It should be noted that in Matter of MERSCORP, Inc. v Romaine (8 NY3d 90, 101-102 [2006], supra), in her dissent in part, former Chief Judge Judith S. Kaye held:
“When presented with a MERS mortgage to record, the Clerk is able to discern from the face of the instrument that MERS has been appointed, as nominee, ‘mortgagee of record.’ As the instrument appears to reflect a valid conveyance (Real Property Law § 290 [3]), the Clerk is required to record the instrument in MERS’ name ‘as a nominee for Lender’ (Real Property Law § 291). Given that the identity of the actual lender is ascertainable from the mortgage document itself — indeed, the use of a nominee as the equivalent of an agent for the lender is apparent, and not unusual — I concur with the majority that the Clerk is obligated to record MERS mortgages” (emphasis added).
Therefore, while the use of a nominee as the equivalent of an agent for the lender is not unusual,[12] what is unusual is the extent various courts will go to limit the contractual role of MERS as a nominee {see e.g. Bank of N.Y. v Alderazi, 28 Misc 3d 376, 3769 [2010] [“the mortgagee’s explicit authority for the particular assignment” is necessary; general language insufficient]; Bank of N.Y. v Mulligan, 28 Misc 3d 1226[A], 2010 NY Slip Op 51509[U] [Sup Ct, Kings County 2010]; HSBC Bank USA, N.A. v Taher, 32 Misc 3d 1208[A], 2011 NY Slip Op 51208[U] [Sup Ct, Kings County, July 1, 2011]; see also In re Agard, 444 BR 231 [2011]).
*548 The cases that limit the definition of a nominee as possessing few or no legally enforceable rights at the same time acknowledge the relationship of MERS and the lender as an agency relationship and that “MERS’s relationship with its member lenders is that of agent with the lender-principal” (Bank of N.Y. v Mulligan, 28 Misc 3d 1226[A], 2010 NY Slip Op 51509[U], *9 [2010], supra). Then the curt statement is made that no authorization to MERS as nominee is shown to assign the subject mortgage or that a written assignment of a mortgage “contains a vague reference to the Note” and “[t]his too, is insufficient to bestow any authority upon MERS to assign the mortgage” (In re Agard, 444 BR 231, 246, 251 [2011], supra). The following citation to Landmark Natl. Bank v Kesler (289 Kan 528, 538, 216 P3d 158, 166 [2009], supra) is often used to support the limitation argument: “This definition suggests that a nominee possesses few or no legally enforceable rights beyond those of a principal whom the nominee serves” (see e.g. In re Agard, 444 BR 231, 251 [2011], supra). Yet, where is the suggestion that MERS, as a “common agent,” is enforcing rights beyond those of a principal?
Here, the parties used the Fannie Mae/Freddie Mac Uniform Security Instrument, that is a three-party agreement among the borrower, lender and MERS. The document expressly grants MERS the right to act on behalf of the lender as required by law and custom, including, but not limited to, the right to foreclose and sell the property and the right to take any action required of a lender such as releasing and canceling the mortgage.[13] The two cases that are repeatedly cited in support of the position that MERS lacks authority as a nominee, Suraleb, Inc. v International Trade Club, Inc. (13 AD3d 612 [2d Dept 2004]) and Tawil v Finkelstein Bruckman Wohl Most & Rothman (223 AD2d 52, 55 [1st Dept 1996] [“(n)o special form of assignment is necessary to effect an assignment as long as the language shows the intention of the owner of a right to transfer it”]), actually add support to the assignment of the mortgage from MERS. The intent to transfer rights is expressly set forth in the documents and in the MERS’ member agreements.
Moreover, as noted above, the disapproving case law concedes the “principal-incident” rule, but claims that the process *549 adopted by MERS alters the rule and now “the Note and Mortgage travel on divergent paths” (In re Agard, 444 BR 231, 247 [2011], supra). It is further claimed a new burden is imposed upon movants to “prove not only that it is acting on behalf of a valid assignee of the Note, but also that it is acting on behalf of the valid assignee of the Mortgage” (In re Agard, 444 BR 231, 247 [2011], supra). As detailed above, such incorrectly states the law since the focus, under the “principal-incident” rule, should be on the mortgage note and not, as in various cases, upon the mortgage as a security instrument (see e.g. Bank of N.Y. v Trezza, 14 Misc 3d 1201[A], 2006 NY Slip Op 52367[U] [Sup Ct, Suffolk County 2006]). One need not be “both the holder or assignee of the subject mortgage and the holder or assignee of the underlying note at the time the action is commenced.” (Bank of N.Y. v Silverberg, 86 AD3d at 279.) It is the interest in the note that is controlling and it is irrelevant if a nominee for the beneficial owner of the note is listed as the mortgagee of record. Cases to the contrary should not be followed.[14]
The use of a nominee[15] in real estate transactions, and as a mortgagee in a recorded mortgage, is a long-standing practice (see Amherst Factors v Kochenburger, 4 NY2d 203, 208 [1958] [“Certainly it is neither illegal nor improper to give such a mortgage and there appears to be no reason why the position of the lender should be compromised because of such an arrangement”]; see also Friedman on Contracts and Conveyances of Real Property § 6:1.5 [7th ed, Practicing Law Institute 2005]). It is well settled in New York that where a mortgage is signed *550 by the mortgagor, delivered to and accepted by the mortgagee, or its agent, the mortgage constitutes a valid contract and security or lien (see Munoz v Wilson, 111 NY 295 [1888]; Wood v Travis, 231 App Div 331 [3d Dept 1931]; see also In re Cushman Bakery, 526 F2d 23, 30 [1975] [citing New York law]). In fact, Real Property Law § 275 (2) (a) expressly recognizes the commercial practice of lenders selling mortgages in the secondary market, as well as the practice of designating “nominees” in such transactions (see Real Property Law § 275 [3]).
Additionally, the State Legislature has certainly modified any such common-law rule by the enactment in recent years of statutes that set forth the criteria for standing purposes. For instance, Real Property Actions and Proceedings Law § 1302 (1) (a) requires in a complaint of foreclosure of high-cost home loans and subprime home loans that the plaintiff affirmatively allege to be “the owner and holder of the subject mortgage and note, or has been delegated the authority to institute a mortgage foreclosure action by the owner and holder of the subject mortgage and note” (emphasis added). The notice required by RPAPL 1303 need only be made by the “foreclosing party,” while the required prior notice provisions of RPAPL 1304 (1) mandate “at least ninety days before a lender, an assignee or a mortgage loan servicer commences legal action against the borrower, including mortgage foreclosure, such lender, assignee or mortgage loan servicer shall give notice to the borrower.” Additionally, the same foreclosing entities must file proof of mailing, with the Department of Banking, of the required prior notice pursuant to RPAPL 1306. Therefore, statutory standing has been expanded to include anyone delegated the authority to institute a mortgage foreclosure action, including a lender, an assignee or a mortgage loan servicer. Under this expanded standing concept, MERS’ role, as mortgagee of record, offers no interference to standing to the plaintiff herein.
Finally, as directed by Merritt v Bartholick (36 NY 44 [1867], supra), one should examine closely the intention of the parties as to whether the documents are intended to be conveyed, transferred, or assigned together. Here, the note and mortgage travel together on the same path, by virtue of the role of MERS as the common agent of the lender and the lender’s successors and assigns. It is clear from the wording of the mortgage loan documents that the intent of the parties is to designate MERS as the mortgagee and for MERS to serve as the common nominee or agent for MERS member lenders and their successors and assigns (see Real Property Law § 257).
*551 Conclusion
In the instant case, the defendant attacks the Assignment of Mortgage, dated January 25, 2010, which lists the mortgagee as MERS, as nominee for American Brokers Conduit, and defines the assignee as the plaintiff, Deutsche Bank.[16] While, as stated above, standing is demonstrated by possession of the note, under the circumstances of this case, by virtue of the interrelatedness of the note and the mortgage, the role of MERS as the nominee for the underlying lender, and the fact that in the MERS system, members contractually agree to appoint MERS to act as their common agent on all mortgages they register, the court finds the role of MERS, as nominee, is not an impediment to plaintiffs standing to bring a foreclosure action, particularly where the borrower expressly agreed without qualification that MERS had the right to foreclose in the event of a default (see Coakley, supra; Saxon Mtge. Servs., Inc. v Coakley, 83 AD3d 1038 [2d Dept 2011]; Mortgage Elec. Registration Sys., Inc. v Korolizky, 54 AD3d 737 [2d Dept 2008]; Wells Fargo Bank, N.A. v Perry, 23 Misc 3d 827 [Sup Ct, Suffolk County 2009]).
There is no inconsistency with the “principal-incident” rule because the assumption being made is that the parties did not intend to transfer the mortgage apart from the debt (see Bow-mar, Mortgage Liens in New York § 14:1 [35 West’s NY Prac Series 2d ed]). As shown above, at item 20 of the Covenants of the mortgage, the borrower agreed that the note, together with the mortgage, could be sold, without notice.[17]
Here, unlike in Bank of N.Y. v Silverberg (86 AD3d 274 [2011], supra) and Aurora Loan Servs., LLC v Weisblum (85 AD3d 95 [2011], supra), which also involved the consolidation of loan instruments, there is sufficient evidence to demonstrate that MERS had the authority from the lender to assign the mortgage. *552 The court finds upon the proofs provided by plaintiff and defendant and upon the mortgage documents and the terms, as explained, of the membership agreements with MERS and the original lender and its successors in interest, that when a lender that holds the note secured by the mortgaged premises, then assigns that note to another member of the MERS system, it need not additionally assign the mortgage because MERS, when it holds legal title to the mortgage lien, stands as common agent for any member who holds the note. As a matter of contract, under the MERS operating agreement, MERS becomes the agent for the new principal, the next purchasing member, each time there is a transfer. The borrower agreed to recognize MERS as the mortgagee of record and as nominee for the lender and lenders’s successors and assigns, it has the right to exercise any and all rights of and to take any action required of the lender, its successors and assigns.
In this context, plaintiff is entitled to enforce the lien because it holds the note (compare US Bank N.A. v Madero, 80 AD3d 751 [2d Dept 2011]). Additionally, although not necessary, based upon all of the proofs offered, plaintiff holds the mortgage pursuant to the role of MERS as common agent. Finally, the Assignment of Mortgage, dated January 25, 2010, while little more than a formality in light of the “principal-incident” rule, occurred prior to the commencement of the action and thereby completed the required elements of standing. While contrary to the holding of In re Agard (444 BR 231, 250 [2011], supra [“without more, this Court finds that MERS’s ‘nominee’ status and the rights bestowed upon MERS within the Mortgage itself, are insufficient to empower MERS to effectuate a valid assignment of mortgage”]), the instant result effectuates the direction of Merritt v Bartholick (36 NY 44 [1867], supra), to ascertain the intention of the parties as to the transferability of the note and mortgage.
Any other rule would ignore the fact that the negotiability of notes is in the national interest, and that courts should encourage beneficial commercial transactions that keep commercial paper flowing and the law of secured transactions which encourage the purchase of notes on the secondary mortgage market.[18] The growing trend of cases that argue for the splitting of the *553 right of enforcement of the note from the mortgage, due to purported defective assignments, in essence, leaves the note unsecured “and confers an unwarranted windfall on the mortgagor” (Restatement [Third] of Property [Mortgages] § 5.4, Comment o]). Such would make it impossible for the holder of the note to foreclose, unless the holder of the mortgage is the agent of the holder of the note. Without that agency relationship, the noteholder is left without the power to foreclose in the event of a default, contrary to the plain meaning of the documents signed by the borrower.[19] While uncertainty exists as to the necessary documentation needed to commence a foreclosure action on a securitized mortgage pooled in a trust, the basic notion expressed in Merritt v Bartholick (36 NY 44 [1867], supra), that is, to ascertain the intention of the parties, is still controlling and should not be ignored. The fact that MERS has developed a system pertaining to mortgage transactions that challenges our traditional assumptions concerning real property law does not automatically render its actions illegal or void. It is a fundamental principle that the courts should not interfere with the contractual rights set forth in a mortgage instrument. Here, standing has been demonstrated and defendant’s claim is rejected.
In view of the foregoing, the instant motion (No. 002) by the defendant is in all respects denied.

. David R Greenberg, Neglected Formalities in the Mortgage Assignment Process and the Resulting Effects on Residential Foreclosures (83 Temp L Rev 253, 254 [fall 2010] [“If the economy was affected so significantly by a reduction in the value recovered on foreclosed properties, a complete inability to recover any value from foreclosed properties could have an even more serious effect on the economy” (id. at 287-288)]).

. As an affirmative defense, lack of standing must be proved by the party asserting such defense (see e.g. Matter of Weinstock, 283 AD2d 510 [2d Dept 2001]; Brignoli v Balch, Hardy & Scheinman, 178 AD2d 290 [1st Dept 1991]).

. The “principal-incident” rule is discussed in Bowmar, Mortgage Liens in New York § 2:2 (35 West’s NY Prac Series 2d ed).

. The issue in Merritt v Bartholick (supra), as to whether with the delivery of the mortgage it was also the intention of the parties to transfer the bond, has been overshadowed by the now long-standing New York rule that a transfer of the mortgage without a transfer of the debt is void. What is commonly ignored in stating the rule is the following caveat — absent a contrary intent of the original contracting parties. It is interesting to note that the New York rule is contrary to the predominate common-law rule that a transfer of the mortgage also transfers the debt unless the parties otherwise agree or such transfer is precluded by the applicable provision of the Uniform Commercial Code (see Restatement [Third] of Property [Mortgages] § 5.4 [b], Reporter’s Note, Comment c [“That authority is not followed by this Restatement”]; see also US Bank N.A. v Flynn, 27 Misc 3d 802, 806 [Sup Ct, Suffolk County 2010]).

. New York case law does permit departure from the long-standing New York rule that a transfer of the mortgage without a transfer of the debt is' void, when construing the intent of the original contracting parties in light of the factual circumstances presented. For instance, in Felin Assoc. v Rogers (38 AD2d 6 [1st Dept 1971]) the original note was lost. The court held,
“To start with, physical delivery of the original note is not mandatory since the mortgage assignment, when accepted and recorded, transfers the interest in the note and mortgage by operation of law, where as here there is no doubt that there is an intent to so transfer the interest in the note and mortgage.” (38 AD2d at 9 [citations omitted].)
In Kawai Am. Corp. v Hilton (205 AD2d 1021, 1022 [3d Dept 1994]), the court found a mortgage enforceable: “When an obligation secured by a mortgage exists aside from the note or bond, the mortgage is not invalidated by the invalidity of the note or bond manifesting the debt” (see also United States v Freidus, 769 F Supp 1266 [SD NY 1991]).

. Real Property Law § 240 (3) states: “Every instrument creating, transferring, assigning or surrendering an estate or interest in real property must be construed according to the intent of the parties, so far as such intent can be gathered from the whole instrument, and is consistent with the rules of law.”

. The article is laced with such phrases as “carrying on something of a bizarre puppet show”; “[i]n addition to its roles as a document custodian and tax evasion broker,” “MERS has become the veiled man wielding the home foreclosure axe”; and “a willingness on the part of courts to let financiers seize homes in whatever manner is most convenient for them.” (78 U Cin L Rev at 1362-1363, 1385.)

. “Romaine provided the Court of Appeals of New York the opportunity to essentially get rid of MERS in New York if the court thought it went that far astray from the policies of the recording system, and it even had the attorney general’s blessing to do so. By rejecting this opportunity, and not allowing the Clerk of Suffolk County to ‘look beyond an instrument that otherwise satisfies the limited requirements of the recording statute,’ the court appears to show at least implicit acceptance of MERS’s role as ‘nominee’ ” (Robert E. Dordan, Mortgage Electronic Registration Systems [MERS], Its Recent Legal Battles, and the Chance for a Peaceful Existence, 12 Loy J Pub Int L 177, 202 [fall 2010]).

. As discussed at Bowmar, Mortgage Liens in New York § 14:8 (35 West’s NY Prac Series 2d ed), when discussing successive assignments of mortgage liens,
“[b]y the ‘principal-incident rule,’ a resolution of the priority of claims to the note alone ipso facto is a resolution of the priority of the claims to the mortgage. It is not possible to separate the claims, so that one assignee would have priority to the note, the other to the mortgage.” (See also Jackson v Mortgage Elec. Registration Sys., Inc., 770 NW2d 487, 494 [Minn 2009] [“It is an oft-stated principle that the ‘mortgage,’ referring to the security instrument, is incident to the debt, such that a transfer of the debt carries the mortgage with it”].)

. In fact, where the debt underlying the mortgage has been satisfied, a foreclosure action must be dismissed (see FGB Realty Advisors v Parisi, 265 AD2d 297, 298 [2d Dept 1999] [“A mortgage is merely security for a debt or other obligation and cannot exist independently of the debt or obligation”]).

. The Kansas high court faced a situation where MERS was trying to set aside a default judgment after the sale of the property. The decision describes how MERS’ own procedures failed to operate and left MERS without notice of the default application, which went to the lender and not MERS as mortgagee of record. Yet, the court misconstrued the principal that “the mortgage follows the note” as meaning that when a separation occurs between the note and the holder of the legal title to the mortgage, the mortgage is nullified. To the contrary, under the “principal-incident rule” and as explained under footnote 9, a new assignment is not necessary and the original mortgagee, holding “legal” title, retains sufficient interest to act on behalf of a subsequent assignee of the note with the mortgage remaining in place (see e.g. Jackson v Mortgage Elec. Registration Sys., Inc., 770 NW2d 487 [2009] [since “the mortgage follows the note,” new mortgage assignments were not required to keep the mortgage perfected]).

. The UCC recognizes the validity of using a nominee. UCC 9-502 (a) (2) states that a financing statement is sufficient if it provides the name of the secured party “or a representative of the secured party” (see In re Cushman Bakery, 526 F2d 23 [1st Cir 1975], cert denied sub nom. Agger v Seaboard Allied Milling Corp., 425 US 937 [1976]). Even though the note is secured by a mortgage, article 9 applies (see UCC 9-109 [b]). The principle that the “mortgage follows the note” is codified in UCC 9-203 (g) and 9-308 (e). The right to payment under a note secured by a security interest also serves to attach the security interest in the mortgage (see 2 Madison, Dwyer and Bender, Law of Real Estate Financing § 11:30, n 12). Finally, a mortgagee can remain in place even where there are subsequent assignments of the note under UCC 9-310 (c). No filing is required to continue the perfected status of the security interest against creditors from the original debtor, even if no steps are taken to reflect the name of the new assignee.

. The agency relationship, as expressed throughout this decision is established (see Restatement [Third] of Agency § 1.01 [“Agency is the fiduciary relationship that arises when one person (a ‘principal’) manifests assent to another person (an ‘agent’) that the agent shall act on the principal’s behalf and subject to the principal’s control”]).

. For example, LaSalle Bank Natl. Assn. v Lamy (12 Misc 3d 1191[A], 2006 NY Slip Op 51534[U], *1 [Sup Ct, Suffolk County, Aug. 7, 2006]), an unpublished decision, held that MERS could not prosecute a foreclosure action in its own name because it was a nominee of the lender and that only “the owner of the note and mortgage at the time of the commencement of a foreclosure action may properly prosecute said action.” That decision was rendered one year prior to the decision in Coakley (supra), which held the exact opposite. It is clear from the above examination of the “principal-incident” rule that ownership of the mortgage is not a prerequisite for foreclosure standing. Moreover, the court’s rejection of the allonge endorsement of the note runs counter to the understanding of negotiability of instruments pursuant to UCC 3-202 (2). As such, it cannot be relied upon.

. The term “nominee” was defined in Schuh Trading Co. v Commissioner of Internal Revenue (95 F2d 404, 411 [7th Cir 1938]) as follows: “The word nominee ordinarily indicates one designated to act for another as his representative in a rather limited sense. It is used sometimes to signify an agent or trustee. It has no connotation, however, other than that of acting for another, or as the grantee of another.”

. Here, the original lender assigned the mortgage to MERS, as nominee, by virtue of naming MERS the mortgagee of record. There is no question that under the mortgage documents, MERS has the authority to assign the mortgage (see CWCapital Asset Mgt. LLC v Charney-FPG 114 41st St., LLC, 84 AD3d 506 [1st Dept 2011] [maintained in plaintiffs capacity as servicing agent]; Fairbanks Capital Corp. v Nagel, 289 AD2d 99 [1st Dept 2001] [delegation of mortgage to service agent by mortgagee was sufficient to give service agent standing to sue]; US Bank N.A. v Flynn, 27 Misc 3d 802, 806 [Sup Ct, Suffolk County 2010] [language conferring broad authority to act in all ways that original lender could act was sufficient to confer authority to MERS as nominee to assign mortgage]).

. “The Note, or an interest in the Note, together with the Security Instrument, may be sold one or more times. I might not receive any prior notice of these sales” (emphasis added).

. Even those who expressed skepticism of MERS, acknowledge that it serves a purpose by streamlining the assignment process in the secondary mortgage market (see e.g. Matter of MERSCORP, Inc. v Romaine, 8 NY3d 90, 100 [2006, Ciparick, J., concurring], supra [“Unquestionably there is a *553 considerable public value in allowing seamless assignments of mortgages in a secondary market”]).

. Even a strong critic of the MERS system argues for an “equitable mortgage.” (“This equitable doctrine seems to fit the circumstances of MERSas-mortgagee loans because borrowers clearly intended to grant security interests. Generally, reasonable borrowers should not expect to receive a home for free. Awarding equitable mortgages to securitization trusts could strike a reasonable balance in the interests of borrowers and lenders without ignoring the fact that the standard security agreement does not name an actual mortgagee” [Christopher L. Peterson, Two Faces: Demystifying The Mortgage Electronic Registration System’s Land Title Theory, SS049 ALI-ABA 259, 276 (2011)].) Here, MERS’ status as common agent for its members satisfies New York’s agency rules and the leap to an “equitable mortgage” is unnecessary.